# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re:**

RONALD KLINE and
BARBARA KLINE,

**Debtors.**

**Bankruptcy Case
No. 05-40479**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Curtis Holmes, Pocatello, Idaho, Attorney for Debtors.

    Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

## BACKGROUND

    The Chapter 7 Trustee, R. Sam Hopkins, filed a timely objection on May 4, 2005, to Debtors Ronald and Barbara Kline's homestead exemption claim in their cabin in Lava Hot Springs, Idaho. Sched. C, Docket No. 5; Obj., Docket No. 11. Trustee contends that Debtors did not establish an automatic exemption in their Lava cabin because they resided in Layton, Utah, and used the Lava house as

MEMORANDUM OF DECISION - 1

a vacation home. The Court conducted an evidentiary hearing on June 24, 2005, concerning Trustee's objection, and invited the parties to file additional briefs and submit documentary evidence via affidavit. Both parties did so. Docket Nos. 17–20. This Memorandum of Decision is the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.

## FACTS[1]

Debtors have lived in Layton, Utah for twenty-five years. With retirement looming, they planned to move to Idaho. In September 1989, Debtors purchased land in Lava Hot Springs, Idaho. Over the next few years they built a small cabin on the land, furnishing it sparsely with a few personal belongings. The cabin was located about eight miles from the Lava Hot Springs town site. Because of its remote location, the county did not maintain the roads in the winter rendering the cabin inaccessible.

Debtors intended to live in Idaho, but only after they both retired. They continued to work in Layton, spending summers at the Lava cabin.[2] Because

---

[1] In making its findings of fact, the Court has relied in part upon its opportunity to observe Mr. Kline testify and to assess his demeanor and credibility. The Court has assigned appropriate weight to his testimony in its decision.

[2] It was not clear from Mr. Kline's testimony precisely when the cabin was constructed, when they began spending summers in Lava, or how Mrs. Kline was able to take off so much time from work.

MEMORANDUM OF DECISION - 2

of road conditions, Debtors never went there during the winter. Mr. Kline eventually retired from his job at Hill Air Force Base in 1998, while Mrs. Kline continued to work at Intermountain Health Care near Layton. Anticipating their retirement, in January 2004, Debtors sold their Utah house, purchased a mobile home, and placed it on a rented lot in Layton. During the spring and summer of 2004, Debtors spent approximately six months at the Lava cabin, returning to Layton in November 2004 so Mrs. Kline could resume work.

While they intended to remain in Layton, in February 2005, Mrs. Kline was forced to accept an early retirement. Her early retirement caused a change in their plans, and the couple wanted to move immediately to the cabin to begin their retirement. But, the heavy winter snow at that time in Lava prevented them from accessing their cabin and delayed Debtors' move.

Before they could move, Debtors filed a Chapter 7 bankruptcy petition in Idaho on March 18, 2005. Debtors moved into the Lava cabin in April 2005. On their Schedule C, Debtors claimed a homestead exemption in the Lava cabin under Idaho Code § 55-1003 for its full value of $21,600. Docket No. 5. They recorded a declaration of homestead on the Lava property in Bannock County, Idaho, but not until May 27, 2005.

MEMORANDUM OF DECISION - 3

## ARGUMENTS OF THE PARTIES

The Trustee contends that Debtors' "principal residence" on the date of their bankruptcy filing was in Layton, Utah. Therefore, he argues, Debtors may not claim a homestead exemption in the Lava cabin. Obj., Docket No. 11; Brief, Docket No. 18. For support, Trustee points to Debtors' 2004 state income tax return, filed in Utah, which indicates they not only received a homestead exemption for local real estate tax purposes in 2004, but also declared that their full-time residence was in Layton, Utah. Trustee asserts Debtors should be estopped from claiming a homestead exemption in their Lava cabin because they had already received the benefits of an exemption in their mobile home under Utah law. Brief at 4–5, Docket No. 18; Aff., Docket No. 19.

Debtors rely upon *Salinas v. Canyon County*, 786 P.2d 611, 614 (Idaho Ct. App. 1990), arguing the holding in that case does not, for purposes of claiming a homestead exemption, require occupancy upon the date of bankruptcy filing but rather only an intent to reside there. Because Debtors intended to retire to Lava Hot Springs, they argue the cabin constituted their homestead and an automatic exemption arose in the property. Alternatively, Debtors assert they established an exemption when they executed and recorded an appropriate declaration of homestead.

MEMORANDUM OF DECISION - 4

## DISPOSITION

**A.     General Standards Applicable to Claiming a Homestead Exemption.**

Individual debtors are entitled to exemptions and can thereby protect a portion of property of the bankruptcy estate from administration by the trustee for the benefit of creditors.  11 U.S.C. § 522(b); *In re Dehaan*, 275 B.R. 375, 379 (Bankr. D. Idaho 2002).  But, in any state opting out of the federal exemption scheme under 11 U.S.C. § 522(b)(1), a debtor may only take advantage of the state law exemptions under the law "applicable on the date of the filing of the petition at the place in which the debtor's *domicile* has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place . . . ."  11 U.S.C. § 522(b)(2)(A) (emphasis added).[3]

**B.     Because Debtors Were Domiciled In Utah, the Idaho Exemption Laws are Inapplicable.**

On their petition, Debtors indicated that their residence was in

---

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 307, 119 Stat. 23, 150–51 (to be codified at 11 U.S.C. § 522(b)(3)), has made extensive changes to § 522.  With the exception of certain enumerated subsections within § 522 not applicable here, its provisions apply to cases commenced on or after the effective date of October 17, 2005.  Pub. L. No. 109-8, § 1501(b), 119 Stat. 23, 509–10.

MEMORANDUM OF DECISION - 5

Bannock County, Idaho, and that venue was proper in this District.[4] Petition, Docket No. 1. However, before Debtors may establish a homestead exemption in the Lava cabin under Idaho law, they must show they were domiciled in Idaho for the 180 days immediately preceding the date of the filing of the petition, or longer. 11 U.S.C. § 522(b)(2)(A); *In re Arrol*, 170 F.3d 934, 935 (9th Cir. 1999); *In re Halpin*, 94 I.B.C.R. 197, 197 (Bankr. D. Idaho 1994).

In *In re Halpin*, the Court explained that the terms domicile and residence reflect distinct concepts:

> Domicile is 'established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.' *Mississippi Bank of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608 (1989). Residence, by contrast, may refer to living in a particular locality without the intent to make it a fixed and permanent home. Black's Law Dictionary 1176 (6th ed. 1990). A person can have but one domicile, but may have several residences. *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 443 (1914).

---

[4] Venue is proper in the district court for the district in which either the "domicile, residence, principal place of business . . . , or principal assets . . . of the [debtor] have been located for the one hundred and eighty days immediately preceding" the bankruptcy filing. 11 U.S.C. § 1408(1). Under this provision, even if Debtors' domicile was in Utah, if the Lava cabin was Debtors' principal asset, venue would be proper in Idaho. No interested party has contested venue of Debtors' bankruptcy case in Idaho as improper.

MEMORANDUM OF DECISION - 6

*In re Halpin*, 94 I.B.C.R. at 197.[5]

Based upon Mr. Kline's testimony, Debtors had a residence both in Idaho and Utah. However, their domicile was clearly in Layton, Utah. Although Debtors summered at the Lava cabin and had done so for several years, they did not intend to make Idaho their fixed and permanent home until both of them retired. Debtors visited the cabin every summer for pleasure, but always with the intent to return to Layton once winter approached. They had lived and held jobs in Layton for twenty-five years. It was only after February 2005 that Debtors intended to move to Lava. But, domicile also requires physical presence. As of the date they filed for bankruptcy, Debtors physically remained in Utah and therefore had not yet effected a change in their domicile. Thus, under § 522(b)(2)(A), because Debtors were domiciled in Utah for the 180 days prior to filing, despite spending the summer in Idaho, they can not claim an Idaho homestead exemption.[6]

---

[5] The Court notes Idaho case law is in accord with federal case law in this regard. *See Reubelmann v. Reubelmann*, 220 P. 404, 405 (Idaho 1923) ("The essential distinction between residence and domicile is that the first involves the intent to leave when the purposes for which one has taken up his abode ceases. . . . One may seek a place for the purposes of pleasure, of business or of health. If his intent be to remain, it becomes his domicile."), *cited with approval in IHC Hospitals, Inc. v. Board of Commissioners of Bonneville County*, 786 P.2d 600, 605 n.1 (Idaho Ct. App. 1990).

[6] This is indeed a bad result for Debtors. As is the case in Idaho, because Utah has "opted out," debtors may not access the federal exemptions allowed under the

MEMORANDUM OF DECISION - 7

Debtors argue, however, that they were domiciled in Idaho because they had spent six months at the Lava cabin during the spring and summer of 2004. Although the Court has concluded otherwise, it is subject to reasonable debate that Debtors' time spent in Lava and their change of heart in February 2005 effected a corresponding change in domicile despite any affirmative steps to move until April 2005. However, even were the Court to find that Debtors' domicile was regarded as being in Idaho such that Idaho's homestead statutes would apply, the Court concludes that, even under Idaho law, the exemption on the Lava cabin was not established prior to Debtors' bankruptcy filing.

**C.   Even If Idaho Law Applies, Debtors Can Not Claim a Homestead Exemption.**

Idaho has accepted the Code's invitation to restrict its citizens to the exemptions allowed under state law. 11 U.S.C. § 522(b)(1); Idaho Code § 11-609. Under Idaho law, debtors are permitted to claim an exemption in a qualifying homestead. Idaho Code §§ 55-1001–1011; *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005); *In re Yackley*, 03.1 I.B.C.R. 84, 84 (Bankr. D. Idaho

---

Bankruptcy Code. 11 U.S.C. § 522(b)(1); Utah Code Ann. § 78-23-15; *In re Carlson*, 303 B.R. 478, 481 (B.A.P. 10th Cir. 2004). And under Utah's homestead exemption statutes, "[a]n individual is entitled to a homestead exemption consisting of property *in this state* . . . ." Utah Code Ann. § 78-23-3(2)(a) (emphasis added). As a result, it appears Debtors could not exempt the cabin under applicable Utah law because it is located outside Utah.

MEMORANDUM OF DECISION - 8

2003). The Court liberally construes the homestead statutes in favor of the debtor. *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998). But it can not torture the language of the state statutes in the guise of liberal construction. *In re Mason*, 254 B.R. 764, 769 (Bankr. D. Idaho 2000).

As the objecting party, the Trustee bears the burden of proving an exemption is not proper. Fed. R. Bankr. P. 4003(c); *Steinmetz*, 261 B.R. at 33. The relevant date for determining the status of a claim of exemption in a homestead is the date of the bankruptcy filing. *In re James*, 05.1 I.B.C.R. 16, 17 (Bankr. D. Idaho 2005) (citing 11 U.S.C. § 522(b)(2)(A) and *Culver, L.L.C. v. Chiu* (*In re Chiu*), 226 B.R. 743, 751 (B.A.P. 9th Cir. 2001)). The amount of the homestead exemption may not exceed the lesser of the net value of the land, or $50,000. Idaho Code § 55-1003.

> The definition of a "homestead" includes:
>
> the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated, and by which the same are surrounded, or improved . . . Property included in the homestead must be actually intended or used as a principal home for the owner.

Idaho Code § 55-1001(2). Thus, to qualify as a homestead eligible for an

MEMORANDUM OF DECISION - 9

exemption, the dwelling house must be one in which the owner resides or intends to reside, and either actually used or intended to be used as the owner's principal home.

Under the rubric of a broad and liberal interpretation of the homestead statues, Debtors' Lava cabin would qualify as a homestead. Since building the cabin, Debtors have spent their summers living in Lava, and so the cabin constitutes a dwelling house in which the owners have resided, albeit periodically. *See In re Tiffany*, 106 B.R. 213, 214 (Bankr. D. Idaho 1989) (holding that periodic absences from a qualifying homestead are not inconsistent with the right to claim the homestead so long as the requisite intent to make the property one's home exists). Debtors intended to live in the Lava cabin as their permanent, and only, home after both of them retired. They had taken steps to facilitate their retirement by selling their house and moving into a mobile home. When Mrs. Kline was forced to retire earlier than planned, Debtors decided they would move immediately to the Lava cabin. For these reasons, under Idaho's statutes, the Court concludes that Debtors have resided at the Lava cabin in the past, and intended to make it their principal home upon Mrs. Kline's retirement such that Debtors could claim it as their homestead.

But before a qualifying homestead will be protected by the

MEMORANDUM OF DECISION - 10

exemption under Idaho Code § 55-1003, the exemption must be established either by occupation as a principal residence by the owner (*i.e.*, the debtor), or through recording the appropriate declarations required by Idaho Code § 55-1004(2). *Field*, 05.1 I.B.C.R. at 14; *In re Moore*, 01.4 I.B.C.R. 147, 149 (Bankr. D. Idaho 2001). An exemption will arise automatically (*i.e.*, without the need of a recorded declaration) in a qualifying homestead "from and after the time the property is *occupied as a principal residence* by the owner . . . ." Idaho Code § 55-1004(1) (emphasis added), *construed in In re Field*, 05.1 I.B.C.R. at 14. For all other property eligible for exemption as described in Idaho Code §§ 55-1001(2) and 55-1004(1), the debtor must execute and record the proper declarations before the exemption will arise in a qualifying homestead.

In this case, the timing of their bankruptcy filing prevents Debtors from establishing a homestead exemption in the Lava cabin. Debtors argue that an exemption arose automatically when they began spending summers in the cabin. However, before an automatic exemption will arise, the property must be occupied by the debtor as a principal residence. Prior to Debtors' move in April 2005, they had lived in Layton, Utah for twenty-five years, making Layton their permanent and principal home. They did not intend for the Lava cabin to be their principal residence until both Debtors retired. Until then, the Lava cabin was merely a part-

MEMORANDUM OF DECISION - 11

time home used during the summers, with Debtors returning to Layton each fall so Mrs. Kline could work.[7]

The Court concludes based upon the evidence that, at the time of filing their bankruptcy petition, Debtors had only just changed their plans and decided to move to Idaho as a result of Mrs. Kline's job loss. The summers spent vacationing at Lava did not establish the cabin as their "principal residence" when, for the past twenty-five years, they had worked and made their home elsewhere. Debtors understandably try to spin the facts. They characterize their situation as "wintering" in Utah after having "moved" to Lava. Brief at 1–2, Docket No. 20. The Court declines to skew the evidence in such a manner, especially when the facts show Debtors did not intend the Lava cabin to become their permanent home until after Mrs. Kline retired. As a result, while the cabin may have been an eligible homestead, it was not protected by the automatic exemption at the time

---

[7] Debtors failed to reflect their part-time residency in Idaho on their 2004 Utah state income tax return despite spending six months in Lava during 2004. Aff. of Trustee, Docket No. 19. Trustee argues Debtors' elected status as full-time residents in Utah for tax purposes establishes that Debtors regarded Layton as their "permanent" home despite plans for a future move to Idaho. Brief at 3, Docket No. 18. But no authority was offered to the Court to show that Debtors qualified under Idaho tax laws as "part-year" residents, and even if they did, to establish whether that status should have an impact upon their ability to establish a homestead exemption under Idaho law in the Lava cabin at the time they filed for bankruptcy.

MEMORANDUM OF DECISION - 12

they filed their bankruptcy petition.[8]

Nor do the Court's prior decisions involving debtors who have relocated due to changes in employment impact the result under these facts. In *In re Tiffany*, 106 B.R. at 214, the Court held that a debtor's temporary absences from his home, occasioned by reasonable causes, were not inconsistent with his right to claim a residence as his exempt homestead. However, in that case, the debtor had no other qualifying homestead. He had also filed a timely declaration of homestead. Instead, the issue in *Tiffany* was whether the debtor's temporary absences defeated his stated intent in the recorded declaration. The Court held that they did not. *Id*.

*In re Koopal*, 266 B.R. 888, 890 (Bankr. D. Idaho 1998) concerned debtors who left their only residence in which they had lived for some time to find work. The issue there was whether, by leaving, debtors abandoned their previously established automatic homestead exemption. The Court held their absence did not result in an abandonment. *Id*. Again, however, in that case debtors had no other qualifying homestead to claim exempt, and it was clear that

---

[8] Debtors cite to *Salinas v. Canyon County*, 786 P.2d 611, 615 (Idaho Ct. App. 1990) for the proposition that an automatic exemption will arise in a qualifying homestead without prior occupation, and that the only requirement is an intended future use as a permanent home. That decision is inapplicable here, as it was decided under Texas state law.

MEMORANDUM OF DECISION - 13

the exemption had been established automatically in the residence because it had been their only permanent home.

Finally, in *In re Millsap*, 122 B.R. 577, 580–81 (Bankr. D. Idaho 1991), there was no timely objection to the debtor's claim of exemption in his cabin, which he had previously used as a vacation home before his divorce. Even if the Court could have decided the exemption issue, under the facts in that case the Court found that the debtor occupied the property as his principal residence from and after his divorce, even though he rented an apartment in a nearby city to be close to his work. *Id*. at 581. Again, the debtor had no other property to confuse with his homestead and corresponding exemption claimed in his cabin,[9] and after his divorce he considered the cabin to be his home.

Unable to establish an automatic exemption in the cabin before their move, Debtors were required to record a declaration of homestead according to Idaho Code § 55-1004(2) before an exemption would arise. That statute provides:

> An owner who selects a homestead from . . . improved

---

[9] In this case, Debtors *did* have a second available homestead and corresponding exemption in their mobile home under either Idaho or Utah law. Utah allows its residents to claim an exemption in a mobile home in which the individual resides in an amount not exceeding $20,000 if the property is the individual's primary personal residence, with a maximum exemption of $40,000 for jointly owned property. Utah Code Ann. § 78-23-3(1)(c), (2)(a), (2)(b). Idaho also includes mobile homes within the definition of a qualifying homestead eligible for an exemption. Idaho Code § 55-1001(2).

MEMORANDUM OF DECISION - 14

> land that is not yet occupied as a homestead must
> execute a declaration of homestead and file the same
> for record in the office of the recorder of the county in
> which the land is located. However, if the owner also
> owns another parcel of property on which the owner
> presently resides or in which the owner claims a
> homestead, the owner must also execute a declaration
> of abandonment of homestead on that other property
> and file the same for record with the recorder of the
> county in which the land is located.

Idaho Code § 55-1004(2). Prior to filing for bankruptcy and before they moved in April 2005, the Lava cabin was, for purposes of this statute, "improved land not yet occupied as a homestead." As a result, until Debtors actually moved to the Lava cabin, no exemption arose unless a declaration of homestead had been recorded. Idaho Code § 55-1004(1).[10] Debtors did not record their declaration concerning the Lava cabin until May 27, 2005, after their bankruptcy filing. Absent a previously established automatic exemption established by occupation as a permanent home, and without a recorded declaration on file when the bankruptcy case was commenced, the Lava property can not be claimed as exempt. *In re James*, 05.1 I.B.C.R. at 17.

---

[10] In addition, Debtors may have been required to record a declaration of abandonment concerning their other homestead, the mobile home in Utah. *See supra*, note 9 and Idaho Code § 55-1004(2) (requiring, if the debtor has two available homesteads or residences, a declaration of abandonment as to a previously established homestead).

MEMORANDUM OF DECISION - 15

## CONCLUSION

Debtors are not entitled to a homestead exemption in the Lava cabin in this bankruptcy case because, prior to filing for bankruptcy, they were domiciled in Utah and under Utah law, they may not claim an exemption in property located outside of the state. Even if Idaho was Debtors' domicile such that Idaho law would apply, a homestead exemption did not arise automatically in Debtors' Lava cabin because, prior to filing, they had never occupied the Lava cabin as their "principal" home. A recorded declaration of homestead was therefore required. Because Debtors' declaration was not recorded before the bankruptcy case was commenced, it was ineffective to establish an exemption.[11]

The Trustee's objection will be sustained and Debtors' claim of a homestead exemption in the Lava cabin disallowed by separate order.

Dated: September 2, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[11] Because of this result, the Court need not consider Trustee's argument that Debtors are estopped from claiming the Lava cabin exempt because they received an exemption for tax purposes in their Utah mobile home for 2004.

MEMORANDUM OF DECISION - 16